IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOMINIQUE STOKES, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § CIVIL ACTION NO. G-04-0596 |
| | § |
| LT. HENRY PORETTO, *et al.*, | § |
| | § |
| Defendants. | § |

**ORDER ON PENDING MOTIONS AND SETTING SCHEDULING AND STATUS CONFERENCE**

Dominique Stokes sued several Galveston Police Department officers who allegedly beat him after his arrest and forced him to have his stomach pumped in order to retrieve evidence that he was accused of having swallowed. Stokes also sued the doctor who pumped his stomach. The following motions are pending:

- Motions to dismiss filed by Officer Pope (Docket Entry Nos. 9 and 10).

- A motion to dismiss filed by Officers Gray, Alcocer, and Poretto (Docket Entry No. 16).

- Motions to dismiss filed by Dr. Luh (Docket Entry Nos. 34, 40).[1]

---

[1] Docket Entry No. 40 is a duplicate of the motion to dismiss that was filed as Docket Entry No. 34. Docket Entry No. 34 is granted; Docket Entry No. 40 is stricken.

- A motion for leave to file the second amended complaint, filed by Stokes (Docket Entry No. 38).

Based on a careful review of the pleadings, the motions and responses, and the applicable law, this court: (1) grants Stokes's motion for leave to file the second amended complaint; (2) grants the motions to dismiss the official capacity claims asserted against the doctor; and (3) denies the motions to dismiss filed by the police officers. This court also sets a scheduling and status conference for **June 22, 2005**, at 8:45 a.m. The reasons for these rulings are set out below.

**I.     Background**

In his proposed second amended complaint, Stokes alleges that after he had been arrested and taken to the Galveston Police Department, Officer Gray screamed that Stokes was attempting to put something in his mouth. (Docket Entry No. 37). Despite Stokes's denials, several officers, including Gray, attacked Stokes and beat him, uttering racial epithets. Stokes alleges that after this assault, Officer Gray told him that he would be taken to the hospital to have his stomach pumped. Stokes refused to consent to the procedure and again denied that he had swallowed anything. Officers nonetheless took Stokes to the hospital and his stomach was pumped. Stokes alleges that three officers, Alcocer, Poretto, and Pope, as well as Gray, used excessive force to assist the medical personnel in their attempts to perform the procedure.

Medical personnel ultimately drugged Stokes, after which Dr. Luh pumped his stomach. Stokes alleges that he was charged with possession of a controlled substance and tampering with evidence, but the indictment was dismissed when the test on the pumped contents of his stomach tested negative for cocaine. (*Id.*, ¶ 26). In his proposed second amended complaint, Stokes alleges unlawful search and seizure and the use of excessive force as to all defendants, including Dr. Luh; due process and equal protection violations as to the officers; and bystander liability as to the two supervisory officers, Poretto and Alcocer.

## II.     The Applicable Legal Standards

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or

unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal citations, quotation marks and ellipses omitted).

Fed. R. Civ. P. 15(a) requires leave of the court for a party to file an amended pleading and provides that such leave "shall be freely given when justice so requires." In deciding whether to grant leave to file an amended pleading, a district court may consider factors such as undue delay; bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice to the opposing party; and futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

### III.   Analysis

The officers' motions to dismiss assert that Stokes failed to plead any specifics as to how they had violated Stokes's rights. In response, Stokes has filed a second amended complaint that details the acts that he contends violated the law.

In *Harlow v. Fitzgerald*, the Supreme Court established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982). The Court subsequently clarified in *Siegert v. Gilley*, 500 U.S. 226,

232–34 (1991) that courts evaluating section 1983 claims based on allegedly unconstitutional conduct by state actors should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* at 201. Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *See Wilson v. Layne*, 526 U.S. 603, 614 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489–90 (5th Cir. 2001). Because qualified immunity constitutes an "*immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original), the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of "such pretrial matters as discovery . . . as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Id.* (quoting *Harlow*, 457 U.S. at

817) (alterations in original).  Adjudication of qualified immunity claims should occur "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  The "legally relevant factors bearing upon the *Harlow* question will be different on summary judgment than on an earlier motion to dismiss." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).  At the earlier stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." *Id.* (emphasis in original).  "On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." *Id.*

This court grants Stokes's motion for leave to file his second amended complaint.  Based on the allegations in that complaint, this court denies the officers' motions to dismiss.  The courts have recognized that allegations of such invasive search methods state a claim for constitutional deprivations.

Before the guaranties of the Fourth Amendment were held to apply to the states, the Court addressed the proper limits on the police conduct of physically intrusive searches under the Due Process Clause of the Fourteenth Amendment.  In *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), the Court suppressed evidence obtained when the police broke into a suspect's house and, after witnessing the suspect swallow two capsules, initially attempted forcibly to extract the capsules

from his mouth and then had his stomach pumped in order to recover them. In holding that this was conduct that "shock[ed] the conscience" and therefore violated due process guaranties, the Court stated that "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents — this course of proceeding by agents of government . . . are methods too close to the rack and the screw to permit constitutional differentiation." *Id.* at 172, 72 S. Ct. at 209–10. Because the Court has shifted from a "shocks the conscience" standard under the Due Process Clause to one of objective reasonableness under the Fourth Amendment, *see Lester v. City of Chicago,* 830 F.2d 706, 710–11 (7th Cir. 1987), if Rochin were considered today, it "would be treated under the Fourth Amendment, albeit with the same result." *County of Sacramento v. Lewis*, 523 U.S. 833, 850 n.9, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

In *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the Court considered the question whether the State had violated an individual's Fourth Amendment rights when it compelled an individual suspected of driving while intoxicated to submit to a blood test. The Court recognized that "[t]he intrusion perhaps implicated Schmerber's most personal and deep-rooted expectations of privacy, and . . . thus required a discerning inquiry into the facts and circumstances

to determine whether the intrusion was justifiable." *Winston v. Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 84 L. Ed. 2d 662. After conducting such an inquiry, the Court held that, under the circumstances presented in *Schmerber*, the compelled blood test was reasonable. *See Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836. However, the Court was careful to state that simply because "the Constitution does not forbid the states minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.* at 772.

The Supreme Court returned to the question of physically-invasive medical procedures under the Fourth Amendment in *Winston*, when it considered the reasonableness of a compelled surgical procedure to recover a bullet from beneath the skin of a robbery suspect. *Winston*, 470 U.S. at 755–56, 105 S. Ct. at 1614. In that case, the Court analyzed the reasonableness of the proposed surgical procedure under what it called "the *Schmerber* balancing test," *id.* at 763, 105 S. Ct. at 1618, and considered the following factors: (1) "the extent to which the procedure may threaten the safety or health of the individual"; (2) "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity"; and (3) "the community's interest in fairly and accurately determining guilt or innocence." *Id.* at 761–62, 105 S. Ct. at 1617–18. After a consideration of these factors, the Court

determined that, under the circumstances at issue in *Winston*, "the Commonwealth . . . failed to demonstrate that it would be 'reasonable' under the terms of the Fourth Amendment to search for evidence of this crime by means of the contemplated surgery." *Id.* at 766, 105 S. Ct. at 1620. *See also United States v. Husband*, 226 F.3d 626, 631–33 (7th Cir. 2000) (considering whether police may use general anesthesia to recover evidence from the person of the defendant); *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995) (determining that a catheter could be used to retrieve evidence from a prisoner under the Eighth Amendment).

The Supreme Court's decisions in *Rochin*, *Schmerber*, and *Winston* help delineate the contours of an individual's right to be free from unreasonable invasive medical procedures. The allegations in Stokes's second amended complaint include that he was beaten and ultimately sedated to the point of unconsciousness to allow the procedure to occur. Stokes alleges that the officers had no reasonable basis to believe that he had swallowed contraband and that he was subjected to excessive force at the police station and the hospital. The motions to dismiss are denied, recognizing that the officers' qualified immunity arguments are more appropriately raised on summary judgment.

Dr. Luh has filed a second motion to dismiss the official capacity claims against him based on Eleventh Amendment immunity. This motion, to which no response has been filed, is granted.

**IV.     Order**

Counsel are to appear for a status conference on **June 22, 2005, at 8:45 a.m.** The court will set a scheduling order, including a motion and briefing schedule, and will consider whether any discovery is necessary to resolve the qualified immunity issues.

SIGNED on June 6, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge